## STEAMBOAT GLOBE *v.* KURTZ.

The Des Moines River is a navigable stream and a public highway, consequently a steamboat may lawfully navigate the same ; and although a ferry may be legally established upon that river, it must be so conducted as to avoid obstructing its navigation. The right to navigate the river is paramount to a ferry franchise, and therefore a steamboat is not required to wait for a ferryman to lower his cable, so as to run any risk or suffer any damage from the delay.

A ferry cable extending across a navigable stream should be so managed as not to be an obstruction to navigation, and so as to cause neither inconvenience or damage to boats.

*Appeal from Wapello District Court.*

*Opinion by* HALL, J. Peter Kurtz, brought a suit in the district court of Wapello county, against the steam boat Globe. He alleges in his petition, that on the 18th of May, 1854, he was the owner of a ferry across the Des Moines river, at the town of Chilweather in said county ; that he had a license from the county judge to keep said ferry. That the ferry was worked with a cable stretched across the river ; that he had the usual fixtures and appliances for lowering the cable, to allow the free passage of

boats : "that whilst he was conducting his business, the said steamer Globe, without warning or notice of her approach, and without giving a reasonable time for lowering said cable, run upon and over the same, and the officers and crew cut and destroyed the same, so as to render it of little or no value," &c.

To this petition, there was a demurrer filed by the boat, which was overruled by the court and exceptions taken. An answer was then filed in which it is admitted, that the plaintiff had a ferry and cable, but denies that he had the necessary fixtures and appliances to lower the cable readily and without creating unreasonable delay to boats in passing · said ferry—denies that the boat approached without warning or notice, and without giving reasonable time for lowering the cable ; admits running over the cable, and cutting the same, but claims that it was only done upon the failure of plaintiff to lower his cable, as he should have done, to enable the boat to pass. That no more damage was done than was necessary to enable the boat to pass in safety.

The replication is these words : "And plaintiff for replication says the petition is true, and he will maintain the same, anything in the answer contained to the contrary notwithstanding."

On the trial, the court at the request of plaintiff, instructed the jury as follows : " That if the jury believe the plaintiff was in the lawful possession and use of the ferry in petition named ; and that the steamer Globe injured the same, the plaintiff is entitled to recover such damages as he has shown to have suffered from such injury, if they also find from the evidence that the plaintiff used reasonable efforts to lower his rope, so that said steamboat Globe could pass with reasonable chances of safety, and that she did not on her part, afford the plaintiff a reasonable opportunity to do so."

The following instructions were presented by the defendant below, and refused by the court : " That the plaintiff

was not entitled to any notice to lower his cable, but must always be in readiness to lower the same, and must lower the same so that boats may pass without any delay.

" That the right to establish a ferry across the said river, does not authorize the charter owner to place any obstruction in said river, nor to do anything else but use the privilege of having and manning a boat or boats across said river."

The defendant below, excepted to the giving and refusing to give these instructions by the court below. There was a verdict and judgment for plaintiff, and the defendant appealed to this court, and with other matters assigns the ruling of the court upon these instructions for error.

The Des Moines river is a navigable stream and a public highway, and the steamboat Globe was lawfully navigating the same. The ferry was established by legal authority. The question presented is, whether the ferry had any authority to obstruct the navigation of the river. The court below, by its charge to the jury, assumes that a boat must notify the ferry owner of his approach, and when the boat has arrived at the point where the cable is stretched across the river, she must wait for the cable to be removed, if the delay is not unreasonable, and can be done "*with reasonable chance of safety*" to the boat. That the charter for the ferry authorizes the proprietor to put an obstruction in the river.

The navigation of the river and the rights of ferry owners are both important rights, and some rule should be adopted to fairly protect both interests, without damage to either. The highway of the river is paramount and must prevail when the mode of constructing a ferry encroaches upon its free navigation. The boat about to pass the ferry was not bound to wait as long as she could do so with a reasonable chance of safety. She was not to run any risk or suffer any damages from the delay. She is not required to suffer the consequences of chance or hazard. We can well conceive of a state of facts where

a steamboat, while navigating the channel of a narrow and rapid stream, could not stop without more or less danger of being forced by the current, upon the shore, or out of the channel, and in this manner suffer great damage and delay. The interest involved in steamboats and their cargoes, cannot be subjected to so narrow a rule. All that is required of the conductors of boats in relation to these *quasi* authorized obstructions, is to act in good faith. They cannot totally disregard the rights of the ferry owners. They make the boat liable for wanton and willful injuries done. In extending to the ferry owner the usual courtesy that is due from man to man, in giving him an opportunity to remove his cable, they are not to wait to estimate the chances of the safety of the boat. They are not called upon to decide how long the boat can delay with "*reasonable chance of safety.*" The interest is too great on the one side and too small on the other, for such a rule. The ferry cable must not be an obstruction to the navigation, and must be so kept that no well meaning man who respects the rights of others, can have good cause to complain at the mode and manner of its removal when the boat is about to pass. "The term *nuisance,* signifies anything that causes *loss, inconvenince, annoyance or damage.*" 3 Petersdorf's Com. Law, 550. If the thing complained of, causes neither of these, it is no nuisance. But if it causes either in the *least degree,* the person complained of must be held answerable, no matter how small the damage may be. *Cooper* v. *Hall,* 5 Ohio, 191. It cannot be contended that the Code, authorizing the county judge to license *ferries,* &c., can be so construed as to authorize a *nuisance* in our navigable rivers. No such authority is granted, and if ferry owners see proper to stretch a cable across the river, they must see that it causes neither inconvenience, annoyance or damages to boats that navigate the river.

The lawful navigation of the river can never be a nuisance to a ferry owner, but a ferry may be a nuisance

by obstructing the navigation. Where the ferry owner is protected in the enjoyment of his franchise and property pertaining to the ferry, against wanton and willful injury from those who are engaged in navigating the river, where he has received the usual courtesies that are extended between man and man, he has no cause to complain. His interest is at best but a servient right, and cannot be extended beyond the naked object of his license. He is allowed to keep a ferry, not to obstruct the navigation or place a nuisance in the river.

*H. B. Hendershott,* for appellant.